# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PRIMAL LIFE ORGANICS, LLC, | ) | CASE NO. 5:15-cv-1507 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| AMY CAZIN, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## I. BACKGROUND

On July 30, 2015, plaintiff Primal Life Organics ("Primal Life" or "plaintiff") filed its complaint against defendants Amy Cazin ("Cazin") and Primal Products, LLC ("Primal Products") (collectively, "defendants"). The complaint is styled as one "for trademark infringement, unfair competition, passing off and cybersquatting under federal law, common law trademark infringement and passing off, and deceptive trade practices under Ohio law." (Doc. No. 1 at 1.)[1]

Defendants moved to dismiss or, in the alternative, to transfer venue (Doc. No. 7) and, in response, pursuant to Fed. R. Civ. P. 15(a)(1)(B), plaintiff timely filed its amended complaint, styled identically to the complaint.

---

[1] As has been explained by the Sixth Circuit: "In 1999, Congress passed the ACPA [Anti-Cybersquatting Consumer Protection Act] to prohibit 'cybersquatting.' As the district court noted, 'cybersquatting' occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 301, 204 (6th Cir. 2004) (citation omitted). It is the latter misconduct that is alleged here.

Defendants then filed a new motion to dismiss or to transfer venue. (Doc. No. 11 ["Motion"].) Plaintiff filed its memorandum in opposition (Doc. No. 18 ["Opp'n"]), defendants filed their reply (Doc. No. 20 ["Reply"]), and, with leave, plaintiff filed a sur-reply (Doc. No. 22 ["Sur-reply"]). The Court conducted oral argument on July 25, 2016.

Defendants' motion first seeks dismissal of the action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and only alternatively to transfer venue. The Court previously determined that it would decide the transfer issue first. (*See* Order, Doc. No. 17, October 19, 2015.) Since, for the reasons discussed herein, the case will be transferred, the motion to dismiss, which had been held in abeyance, will be denied without prejudice.

## II. DISCUSSION

A.   **Factual Allegations and Procedural Background**

The amended complaint (Doc. No. 10 ["Am. Compl."]) alleges that Primal Life is an Ohio limited liability company doing business throughout the world and in Ohio, with its principal place of business in Fairlawn, Ohio. (Am. Compl. ¶ 2.) Since 2009, plaintiff has been in the business of "inventing and producing organic personal skincare products[.]" (Am. Compl. ¶ 3.) Since January 2012, Primal Life has owned and operated a website known as www.primallifeorganics.com. (*Id.* ¶ 4.)

Defendant Primal Products is a Florida limited liability company with its principal place of business in Austin, Texas. (*Id.* ¶ 5.) After the instant complaint was filed, Primal Products filed a name change application in Florida, changing its name to P3 Organics, LLC ("P3"). (*Id.* ¶ 6.) P3 is now also named as a defendant herein. Defendant Cazin is allegedly the owner of both Primal Products and P3, as well as the internet-based business operating at the domain name of

www.primallifeorganic.com (the "Infringing Website"), which differs from plaintiff's website by only one letter "s." (*Id.* ¶ 7.)

**B.     The Parties' Positions**

Defendants argue that this case should be transferred, pursuant to 28 U.S.C. § 1404(a), to the U.S. District Court for the Western District of Texas, where the parties have entered into a settlement agreement involving alleged infringement of Primal Product's trademarks. That settlement agreement contains a forum selection clause stating that "[a]ny litigation to enforce this agreement must be brought in a court of competent subject matter jurisdiction in Travis County, Texas." (*See* Doc. No. 7-2.)[2]

Primal Life asserts that it does not seek to enforce the referenced settlement agreement and, therefore, the forum selection clause does not control.[3] It further argues that this trademark infringement action "derives from separate and distinct actions initiated by [d]efendants and unknown to [p]laintiff at the time of execution of the settlement agreement in the Texas litigation[,]" and that there are parties here who were not party to the Texas case and/or its settlement agreement.[4] (Opp'n at 134, 136.) Plaintiff argues that the gravamen of the instant complaint is that defendants have wrongfully "divert[ed] customers looking for [p]laintiff's products to the [d]efendants' website, primalpitpaste.com[,] by way of the domain name without

---

[2] The Settlement Agreement from the case in Texas (Case No. 1:14-cv-00805) was attached to the original motion to dismiss/transfer (Doc. No. 7), but it was not reattached to the new motion to dismiss/transfer (Doc. No. 11). The Court is permitted to consider this document without converting the motion to transfer into a motion for summary judgment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

[3] The Court notes that Primal Life does not challenge the validity of the forum-selection clause.

[4] Only Primal Products and Primal Life were parties in Texas. However, Primal Life acknowledged in its counterclaim in Texas that Amy Cazin was the owner and chief operating officer of Primal Products, and it further acknowledged in the complaint herein that P3 is the new name of Primal Products. Therefore, the viability of any argument that the parties are different is somewhat questionable.

the 's', and which has caused [p]laintiff loss of business and other damages due to market confusion." (*Id.* at 135.)[5]

**C.     Analysis**

The issue currently before this Court is whether this case is so related to the Texas litigation that it should be transferred there under the forum selection clause contained in the Texas settlement agreement.

In *Atl. Marine Constr. Co., Inc.*, -- U.S. --, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2014), the Supreme Court held that "Section 1404(a) … provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district[,] [and that] a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 579 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (Kennedy, J., concurring)). Resolution of the instant motion depends upon whether the forum-selection clause in the Texas settlement agreement applies to the dispute in the instant case.

Although defendants have supplied this Court with a copy of the settlement agreement in the Texas litigation, neither party provided a copy of the complaint and/or answer and counterclaim in that litigation to enable comparison of the two lawsuits, which is a necessary precursor to a determination as to whether this lawsuit was already anticipated by the Texas lawsuit and, therefore, encompassed by the settlement agreement. Because this Court may take judicial notice of related "'proceedings in other courts of record[,]'" *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n. 5 (6th Cir. 2005) (quoting *Rodic v. Thistledown Racing Club,*

---

[5] Plaintiff is making reference here to its website (www.primallifeorganics.com) as compared to defendant's allegedly infringing site (www.primallifeorganic.com), i.e., "the domain name without the 's'."

*Inc.*, 615 F.3d 736, 738 (6th Cir. 1980); Fed. R. Evid. 201), the Court accessed relevant documents from the official website of the Western District of Texas, including briefing on a motion to dismiss or transfer that was filed by Primal Life in that case.

In the Texas litigation, Primal Products asserted claims of trademark infringement, unfair competition, and unjust enrichment against Primal Life, alleging that, on its online retail store, Primal Life sells various deodorant and skincare products that infringe the various PRIMAL trademarks of Primal Products, and are confusingly similar to products promoted by Primal Products. Primal Life denied any infringement and filed a counterclaim seeking a declaratory judgment that it was not infringing or engaging in unfair competition, and that it had not enjoyed any unjust enrichment.

The parties entered into a settlement agreement in Texas. It provides that Primal Life will remove the terms "Primal Pit Stick" and "Pit Stick" from its products, provided Primal Products also does not use the term "Primal Pit Stick" on its products (a condition to which Primal Products agreed), and Primal Life will not oppose Primal Products' registration of "Primal Paste," "Primal Scrub Rub," "Primal Pit Paste," "Primal Pits and Bits," and "Pits & Bits Go Primal." (Doc. No. 7-2 at 70-71.)

The Court concludes that the instant lawsuit, as currently pleaded and, even more so, as will be pleaded once Primal Products has an opportunity to assert its anticipated counterclaim, is closely related to the Texas lawsuit.[6]

---

[6] During the July 25th hearing, counsel for Primal Products confirmed that its counterclaim would raise, at least in part, Primal Life's alleged continued improper use of marks encompassed by the Texas settlement, where Primal Life agreed not to use Primal Products' trademarks. Primal Products represented at oral argument that it will allege in its counterclaim that Primal Life continues to use PRIMAL marks on its website by means of metatags that direct traffic to *its* products and away from *defendant's* products.

Although Primal Life has attempted to narrowly recast the dispute in a manner that might avoid the forum selection clause in the Texas settlement agreement, that effort is unavailing. The Court also notes that Primal Life unsuccessfully sought an order in the Texas litigation to transfer that action to the Northern District of Ohio. In its Texas motion to dismiss, Primal Life stated: "The gist of the complaint [of Primal Products] is that Defendant [Primal Life] has committed 'Infringing Activities' described as operating 'an online retail store, offering various deodorant and skincare product[s] through the website www.primallifeorganics.com' more particularly focused on the website's offering of Plaintiff's 'Primal Pit Stick' which is alleged to unfairly compete with Defendant's 'Primal Pit Paste.'" (Texas litigation, Case No. 1:14-cv-805, Doc. No. 7 at 1-2.) Primal Life clearly reflected in its motion to dismiss filed in Texas its belief that Primal Products was alleging that Primal Life was using its website to engage in infringing activities. Here, Primal Life is alleging that Primal Products is using its website to divert online traffic from Primal Life to Primal Products, and, additionally, Primal Products has represented to the Court that it intends to counterclaim that Primal Life is *still* infringing its PRIMAL marks through Primal Life's website's metatags. The claims in the instant case and the Texas case are very inter-related. This case appears to be a continuation of the Texas lawsuit, a fact that is further underscored by the mere four-month interval between the settling of the Texas case (March 26, 2015) and the filing of the complaint herein (July 30, 2015).

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 134 S. Ct. at 581. First, no weight is given to plaintiff's choice of forum, and "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 582. Second, the court "should not consider arguments about the parties' private interests[,] … [and] must deem

6

the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* As a consequence, the court may consider only the public-interest factors, including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581, n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). Third, under forum-selection circumstances, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules[.]" *Id.*

Here, a Texas forum has already dealt, to some degree, with the dispute between these parties. It is now the task of that forum to decide how the parties' settlement agreement may impact the claims in the instant lawsuit.

### III. CONCLUSION

For the reasons set forth herein, defendants' alternative motion to transfer this matter to the U.S. District Court for the Western District of Texas (Doc. No. 11, Part 2) is **granted**. The motion to dismiss (Doc. No. 11, Part 1) is **denied as moot**.

**IT IS SO ORDERED**.

Dated: July 29, 2016

                                                     **HONORABLE SARA LIOI**
                                                     **UNITED STATES DISTRICT JUDGE**